## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

WILLIAM TAYLOR and MICHAEL
THIBEAULT, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

    v.

IKO MANUFACTURING, INC., a  Delaware
corporation; IKO INDUSTRIES INC., a
Delaware corporation; IKO INDUSTRIES
LTD., a Canadian corporation; IKO
MIDWEST INC., a Delaware corporation;
and IKO PRODUCTION INC., a
Delaware corporation,

        Defendants.

Case No. 12-10593


**CLASS ACTION COMPLAINT**


**DEMAND FOR JURY TRIAL**

Plaintiffs, William Taylor, and Michael Thibeault on behalf of themselves and others similarly situated, by and through their undersigned counsel, file this Complaint, and in support thereof state and aver as follows:

### NATURE OF ACTION

1.     This is a consumer class action on behalf of all persons and entities in the Commonwealth of Massachusetts who purchased organic-based or matted shingles manufactured and/or distributed under various trade names by IKO Chicago, Inc. (f/k/a and/or d/b/a IKO Manufacturing Inc.), IKO Industries Inc., IKO Industries Ltd., or IKO Midwest Inc., and IKO Production, Inc. (collectively "IKO" or "Defendant(s)").

### JURISDICTION AND VENUE

2.     IKO, throughout its various subsidiaries and affiliates, operates manufacturing plants in the United States, Canada, and Europe and has significant business operations in the

Commonwealth of Massachusetts where it sells, markets, and services IKO Shingles and has sufficient contact with Massachusetts or otherwise intentionally avails itself to the laws and markets of Massachusetts, so as to sustain this Court's jurisdiction over Defendant.

3.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) in that Plaintiffs are class members and citizens of, Massachusetts and Defendants are citizens of Delaware, Illinois, Washington, or Canada; and the amount in controversy exceeds Five Million Dollars ($5,000,000.00).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 *et seq*., because a substantial part of the events or omissions giving rise to this claim occurred in the Commonwealth of Massachusetts.

## PARTIES

5.      At all relevant times Plaintiff and class representative William Taylor was a resident of Foxborough, Massachusetts.

6.      At all relevant times Plaintiff and class representative Michael Thibeault was a resident of Ashburnham, Massachusetts.

7.      Defendant IKO Manufacturing Inc. is a Delaware corporation with significant business operations in Kankakee, Illinois.

8.      Defendant IKO Industries Ltd. is an Alberta corporation and leading North American manufacturer and distributor of roofing materials and the parent company of Defendant IKO Manufacturing.  IKO Industries Ltd. is the owner of several patents that may apply to the Shingles manufactured by IKO Manufacturing.  The company operates manufacturing plants in Canada, and its Shingles were distributed in the United States.

2

9.     Defendant IKO Midwest, Inc. is a Delaware corporation with significant business operations located in Kankakee, Illinois.  IKO Midwest, Inc. manufactures, distributes, and sells IKO Shingles throughout the United States.

10.     Defendant IKO Industries, Inc. is a Delaware corporation that imports Canadian-made IKO Shingles to the United States.

11.     Defendant IKO Production, Inc. is a Delaware corporation with significant business operations in Wilmington, Delaware, where it manufactures, distributes, or sells IKO Shingles.

12.     Customer complaints and warranty claims made regarding IKO shingles sold in the United States have been processed in Illinois since 1989.

13.      All marketing of IKO shingles in the United States, including distribution of advertising as well as marketing and promotional material, has been managed by offices in Illinois.

14.     Since 1987, the chief financial officer for IKO's United States operations has maintained his principal office in Illinois.

15.     Between 1981 and 1995, the President for IKO's United States operations maintained an office in Illinois.

## SUBSTANTIVE ALLEGATIONS

### A. Background

16.     Upon information and belief, IKO sold or distributed shingles throughout the United States, but primarily in the northern tier states and portions of the south-eastern United States between approximately 1979 and 2007 (hereinafter collectively "Shingles" or "IKO Shingles").

17.     All IKO Shingles are manufactured using the same basic formula: a base layer of organic felt saturated with asphalt, a middle layer of an oxidized asphalt coating, and a top layer of mineral granules with a strip of asphalt sealant.

18.     Defendants manufactured and marketed its Shingles under various brands and product names, including but not limited to Château, Renaissance XL, Aristocrat, Total, Armour Seal, Superplus, Armour Lock, Royal Victorian, New Englander, Imperial Seal, Cathedral XL, Ultralock 25, Armour Plus 20, Armour Tite, UltraShadow, Cathedral XL, Crowne 30, Vista, Supreme, and Skyline, for sale nationwide.  Defendants marketed and sold the organic Shingles to tens of thousands of consumers throughout the United States.

19.     IKO markets and warrants all the Shingles as durable and as offering long-lasting protection for a specified life ranging from 20 to 50 years, or in some cases, for a lifetime.  The industry and consumers recognized the warranty nomenclature as having meaning as a shingle with a 25-year warranty is referred to as a "25-year shingle."  Additionally, shingles with a 20-year warranty are generally priced at a lesser amount than shingles with a 50-year warranty.

20.     IKO's sales brochures and marketing literature, which were widely distributed to building and roofing professionals who installed shingles and generally available to all Plaintiffs and the Class at the time of sale, state the Shingles are, among other things, "[t]ime-tested and true" and "an excellent choice for exceptional roofing value."  IKO's Shingles have not stood the test of time and, given the early and severe deterioration that requires premature tear-off and replacement, have not proven to be of value when compared to fiberglass shingles.

21.     IKO described its warranty in widely distributed documents to building and roofing professionals who installed shingles and documents generally available to the Plaintiffs

and the Class as "IRON CLAD" and further claimed IKO was "Setting the Standard" for "quality, durability, and innovation."  IKO's Shingles have not lived up to that promise.

22.      IKO represents to Plaintiffs and the Class in documents generally available to the public that its shingles would last for a specified period of time without problems, or the company would remedy the situation.  IKO makes this representation before purchase and at the time of purchase via sales brochures, marketing materials (including but not limited to store displays, sales seminars, and training materials), and on the Shingles' packaging.

23.      The Shingles manufactured and sold by IKO are defectively designed and manufactured such that they fail prematurely causing damage to the underlying structures (including roof, structural elements, interior walls and ceilings) and other property of Plaintiffs and members of the Class.  The Shingles are non-conforming.

24.      The defects present in IKO Shingles are so severe that Plaintiffs and members of the Class must repair or replace their roofs sooner than reasonably expected by ordinary consumers who purchase shingles generally and by consumers who purchased these Shingles specifically.

25.      All of IKO's Shingles are uniformly defective such that Plaintiffs' and Class members' Shingles are failing before the time periods advertised, marketed, and guaranteed by IKO or otherwise expected by ordinary consumers purchasing Shingles.

26.      IKO knew or reasonably should have known the Shingles are defective as designed and manufactured such that they fail prematurely due to moisture invasion.  The organic materials contained in the Shingles are susceptible to becoming wet, moist, saturated, or otherwise invaded by water.  Further degradation is caused when the wet, moist, or saturated organic material goes through repeated freeze and thaw cycle(s).  The degradation continues as

the Shingles lose the ability to hold granules further subjecting the organic content of the Shingles to moisture.  Shingles are then further degraded when subjected to the sun as the drying of the content eventually causes the Shingles to lose shape and deform.  The outward manifestation of the Shingle deterioration and deformation is cracking, curling, blistering, fishmouthing, clawing, and discoloration.  At the extreme, the Shingles break at the edges or blow off roofs.  In short, the Shingles do not perform in accordance with the reasonable expectations of consumers that such products be durable and suitable for use as a roofing product.

27.     The following photos, attached hereto in thumbnail form and in full as **Exhibit A**, are a sampling of the problems Plaintiffs and the Class have experienced with their IKO Shingles:



**B. IKO's Failure to Comply with the ASTM D225 Industry Standard**

28.  IKO represents to the public that its organic shingles meet ASTM D225 qualities for organic asphalt roofing shingles. IKO marks its product packages with an ASTM D225 stamp, its product specification sheets state that the products meet ASTM D225, and IKO's marketing materials state that its shingles meet ASTM D22k standards.

29.  ASTM D225 is required by building codes and consumers expect that their shingles will meet code. The ASTM D225 standard requires that a manufacturer test its shingle according to a protocol outlined in a companion standard identified as ASTM D228.

30.  Despite its uniform and consistent representations to consumers, suppliers, and roofers, IKO did not test the shingles purchased by Plaintiffs or the putative class to ensure that they satisfied ASTM D225. IKO never informed consumers that it was not performing ASTM D228 testing.

31.  IKO did not perform ASTM D228 testing in the ordinary course of business. And the testing actually performed by IKO was so inadequate that it does not yield the data necessary to determine whether a particular shingle or a particular lot of shingles meets the industry standard.

32.  The IKO organic shingles purchased by Plaintiffs and putative class members suffer from a common defect in that they fail to satisfy ASTM D225 requirements. Specifically, IKO organic shingles prematurely show the kind of deterioration that is expected in shingles three times older than they actually are because the saturant, top coating, and mineral fines make the shingles abnormally sensitive to moisture. This common defect causes IKO shingles to lose surfacing (granule loss), and fissure (crack) and fishmouthing (bending/curling).

**C. IKO's Warranty**

33.      IKO sells warranties with its Shingles.  The warranties are marketed and create an expectation within the industry and by ordinary consumer purchasers that the Shingles will last as long as the warranty period.  The warranty furthers these expectations by guaranteeing that a Shingle will last for a specified period of time.  The Class was generally charged more to purchase Shingles with a Warranty as the warranty period increased in length thereby creating the expectation that a longer warranty period advertised and guaranteed had meaning.

34.      IKO established a warranty period to be advertised and guaranteed for its Shingles without conducting appropriate testing to determine if the Warranty period was supported by actual or simulated use.  As to some of the Shingles, it appears that the warranty period increased in duration with IKO making substantial changes to the design or manufacturing process of its Shingles and without further or appropriate testing.

35.      IKO did not use a process or formula for determining the length of its warranties, but rather extended the length of warranties as the business environment changed so that IKO would not be put at a marketing disadvantage vis-à-vis its competitors.

36.      Generally, as IKO's competitors began to offer longer warranty periods for similar shingles, IKO lengthened the warranty period of its Shingles without adequate or appropriate testing to determine if the increase of warranty was justified, supportable, or otherwise true.

**D. IKO's Handling of Warranty Claims**

37.      IKO uses an overly burdensome warranty claims process that is designed to deter warranty claimants from filing, and reduce the number of "valid" claims that it receives.  Much

of the information that IKO requires is not available to homeowners, especially those who purchased a new home from a builder or were not the original owners of the roof.

38.     IKO will not consider a warranty claim until a customer submits all of the following information to the company:

a.     Proof of purchase of an IKO product indicating the type of shingle, quantity, and date on which a roof was applied.

b.     Proof of purchase indicating the claimant is the original owner of the home;

c.     Date shingles were applied;

d.     Number of shingles applied;

e.     Number of shingles involved in the claim;

f.     Type of roof deck;

g.     The number of layers of shingles on the roof;

h.     The slope of the roof deck;

i.     The number of vents on the roof;

j.     Photographs of the roof that were not taken from a digital camera; and

k.     Two full shingle samples (which requires a roofing professional to carefully remove in-service shingles from the claimant's roof).

39.     Instead of providing compensation based upon the terms of warranty, IKO intentionally misleads warranty claimants, including Plaintiffs and the Class, by requiring them to sign a Goodwill Release of Warranty (hereinafter "Goodwill Release") in exchange for cash compensation.

40.     The consideration offered by IKO in exchange for a signed Goodwill Release is woefully inadequate to compensate claimants for IKO's defective Shingles because it does not cover the full cost of replacement shingles, labor, disposal, or other related costs incurred by Plaintiffs and the Class.

41.     The Goodwill Release is not compensation under the terms of the Warranty, but rather "represents the compromise of a disputed claim."  In essence, it is IKO's routine business practice to dispute every warranty submitted to the company, even though it had actual and constructive notice that its Shingles are defective pursuant to their very own requirements.  A sample of IKO's Goodwill Release is attached hereto as **Exhibit B**.

42.     The Goodwill Release operates as a waiver of the warranty, and releases IKO from "any and all claims, causes of action, agreements, promises, damages and demands . . . of any kind or nature whatsoever . . . which the [warranty claimant] ever had or now has against IKO . . ." **Exhibit B**.

43.     The goodwill Release is IKO's attempt to "buy off" any future claims relating to its Shingles and relieve itself of the burden and responsibility of future warranty claims concerning any possible remaining Shingles on a warranty claimant's roof.

44.     The consideration offered for an executed Goodwill Release is based upon a fraction of the cost of replacing only the shingles that exhibit the defect at that time, but the Goodwill Release waives the warranty on the entire roof, regardless of whether the claimant was compensated for the release.

**E. IKO's On-going Refusal to Notify Its Customers of the Defects Associated With Its Shingles.**

45.     Since 1984, IKO has received thousands of warranty claims alleging a manufacturing or design defect in the Shingles.

46.     A substantial percentage of all warranty claims received by IKO relate to its organic Shingles.

47.     An inordinate percentage of all warranty claims denied by IKO relate to claims made about the Shingles.

48.     Despite receiving a litany of complaints from consumers, such as Plaintiffs and other members of the Class, IKO has refused to convey effective notice to consumers about the defects, and refused to repair defective roofs fully or repair the property damaged by the premature failure of its product.

49.     IKO's response to customers' warranty submissions is woefully inadequate under these circumstances in that it limits Plaintiffs' and Class members' recovery to replacement costs of individual Shingles piece by piece and excludes costs of labor to replace the Shingles.

50.     The average compensation paid on a non-organic shingles claim is greater than the average compensation paid on an organic Shingles claim.

**F. IKO's Acts and Omissions Have Damaged Plaintiffs and the Class**

51.     As a result of the defects and failures alleged herein, Plaintiffs and the Class have suffered actual damages.  The Shingles on their homes, buildings, and other structures have and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by IKO, and the time warranted by IKO, resulting in damage to the underlying roof and housing stricter and requiring them to expend thousands of dollars to repair damage associated with the incorporation of the Shingles into their homes, buildings, and other structures, and to prevent such damage from continuing.  Damage caused by the defective Shingles includes, but is not limited to: damage to the underlying felt, damage to structural roof components (including the rotting and degradation of plywood sheathing, trusses, and rafters), damage to plaster and sheetrock, and damage to walls, ceiling, and other components either as a result of the Shingles themselves or damage at the time when the Shingles are removed and replaced.

52.     Because the defects in the Shingles are latent and not detectable until manifestation, Plaintiffs and the Class members were not reasonably able to discover their Shingles were defective until after installation, despite the exercise of due diligence.  Indeed, at the time of first sale, building and construction professionals would not be able to detect the latent defect unless they subjected the Shingles to their own testing, modeling, or analysis.

53.     The relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against IKO on their own.  This is especially true in light of the size and resources of IKO.  A class action is, therefore, the only reasonable means by which Class members can obtain relief from these Defendants.

54.     The organic asphalt Shingles manufactured and sold by IKO are defectively designed and manufactured such that they fail prematurely causing damage to the property of Plaintiffs and members of the Class and forcing them to repair or replace their roofs sooner than reasonably expected, than marketed, and than warranted.

55.     Plaintiffs seek to recover, for themselves and the Class, the costs of repairing the damage to their property and replacing their roofs, or injunctive relief forcing IKO to replace their defective roofs.

**G. Plaintiff William Taylor's Shingles**

56.     Mr. Taylor purchased IKO Shingles on July 11, 1996 and installed the shingles on the roof of his personal residence shortly thereafter.

57.    At the time Mr. Taylor purchased the IKO Shingles, IKO represented to Mr. Taylor that the Shingles have a useful life of at least 25 years, and Mr. Taylor reasonably expected that the Shingles would last that long.

58.    Mr. Taylor first became aware of the problem with his Shingles on April 26, 2010 when he notice that the Shingles were curling, shrinking, and allowing water to penetrate the roof, damaging the interior structure of his home.

59.    In June 2010, Mr. Taylor contacted IKO to make a warranty claim, and at that time, he notified IKO that his Shingles are defective.

60.    In response to the warranty claim, IKO offered to pay Mr. Taylor $452.18.  In order to receive this payment, IKO required Mr. Taylor to sign a "Goodwill Release of Warranty" that would waive any claim to further compensation due or owing Mr. Taylor resulting from IKO's defective product.  Mr. Taylor refused to return the "Goodwill Release of Warranty" to IKO.

61.    Mr. Taylor received a repair estimate of approximately $11,500 to correct the problems caused to his roof by IKO's Shingles.  This is a cost that would not have been incurred for at least a decade had the consumer expectations been met that were formed based upon the marketing and warranty of the Shingles.

62.    Mr. Taylor had no reasonable way to discover the Shingles were defective until after he received an estimate to repair his roof to correct the problems caused by IKO's Shingles..

**H. Plaintiff Michael Thibeault's Shingles**

63.    Mr. Thibeault purchased IKO Shingles on October 12, 2000 and installed the shingles on the roof of his personal residence shortly thereafter.

64.     At the time Mr. Thibeault purchased the IKO Shingles, IKO represented to Mr. Thibeault that the Shingles have a useful life of at least 25 years, and Mr. Thibeault reasonably expected that the Shingles would last that long.

65.     Mr. Thibeault first became aware of the problem with his Shingles in September 2011 when he notice that the Shingles were curling, shrinking, and allowing water to penetrate the roof, damaging the interior structure of his home.

66.     In September 2011, Mr. Thibeault contacted IKO to make a warranty claim, and at that time, he notified IKO that his Shingles are defective.

67.     In response to the warranty claim, IKO offered to pay Mr. Thibeault $446.76.  In order to receive this payment, IKO required Mr. Thibeault to sign a "Goodwill Release of Warranty" that would waive any claim to further compensation due or owing Mr. Thibeault resulting from IKO's defective product.  Mr. Thibeault refused to return the "Goodwill Release of Warranty" to IKO.

68.     Mr. Thibeault received a repair estimate of approximately $7,000 to correct the problems caused to his roof by IKO's Shingles.  This is a cost that would not have been incurred for at least a decade had the consumer expectations been met that were formed based upon the marketing and warranty of the Shingles.

69.     Mr. Thibeault had no reasonable way to discover the Shingles were defective until shortly before filing this lawsuit.

## CLASS ACTION ALLEGATIONS

70.     This action has been brought and may properly be maintained as a nationwide class action pursuant to Federal Rule of Civil Procedure 23, and case law thereunder on behalf of Plaintiffs and all others similarly situated, with the Class defined as follows:

> All individuals and entities that have owned, own, or acquired homes, residences, or other structures physically located in the United States, on which organic IKO shingles are or have been installed since 1979. "Organic IKO shingles" is defined as all organic shingles manufactured or distributed by Defendants.  Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

71.    Alternatively or in addition to the Nationwide Class claims, Plaintiffs bring, as applicable to each of the various States where the laws are similar to each of the states in which a named Plaintiff resides, cause of action one, two, three, five, and seven under Federal Rule of Civil Procedure 23 on behalf of himself and State Sub-Classes defined as

> All individuals and entities that have owned, own, or acquired homes, residences, or other structures physically located in the applicable State, on which organic IKO shingles are or have been installed since 1979. Organic IKO shingles is defined as all organic shingles manufactured or distributed by Defendants.  Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors.  Also excluded are the judge to who this case is assigned and any member of the judge's immediate family.

72.    Plaintiffs reserve the right to re-define the Class(es) prior to class certification.

73.    While the precise number of Class members is unknown to Plaintiffs, upon information and belief, Plaintiffs believe the number is well in excess of 1,000 and the Class likely includes many thousands such that joinder is impracticable.  The true number of Class members is likely known by Defendants.  Disposition of these claims in single class action will provide substantial benefits to all parties and the Court.

74.    The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, and all Class members, own homes, residences, or other structures on which defective Shingles manufactured by IKO have been installed.  Those

Shingles have failed, and will continue to fail, prematurely.  The representative Plaintiffs, like all Class members, have been damaged by IKO's conduct in that they have incurred or will incur the costs of repairing or replacing their roofs and repairing the additional property damaged by the Shingles' premature failure.  Furthermore, the factual bases of IKO's conduct is common to all Class members and represents a common thread of deliberate, fraudulent and negligent misconduct resulting in injury to all members of the Class.

75.     There are numerous questions of law and fact common to Plaintiffs and the Class. Those questions predominate over any questions that may affect individual Class members, and include the following:

a.     Whether IKO Shingles are defective in that they fail prematurely and are not suitable for use as an exterior roofing product for the length of time advertised, marketed and warranted;

b.     Whether the Shingles are defectively designed or manufactured;

c.     Whether IKO knew or should have known of the defective nature of the Shingles.

d.     Whether the Shingles failed to perform in accordance with the reasonable expectations of ordinary consumers;

e.     Whether IKO properly instructed consumers about the likelihood of premature failure;

f.     Whether the Shingles fail to perform as advertised and warranted or expected by an ordinary consumer;

g.     Whether IKO's conduct in marketing and selling its Shingles involved misrepresentations, internal omissions, or was otherwise unfair and deceptive.

h.     Whether Plaintiffs and the Class are entitled to compensatory, exemplary and statutory damages, and the amount of such damages;

i.     Whether IKO should be declared financially responsible for notifying all Class members about their defective Shingles and for all damages associated with the incorporation of such Shingles into Class members' homes, residences, buildings, and other structures; and

j.     Whether IKO has changed or altered its warranty program without notice to the Plaintiffs and the Class.

76.    Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in prosecuting statewide, multistate and national consumer class actions, actions involving defective products, and, specifically, actions involving defective construction materials.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

77.    Plaintiffs and the members of the Class have suffered and will continue to suffer harm and damages as a result of IKO's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, the vast majority of the Class members likely would find the cost of litigating their claims to be

prohibitive, and would have no effective remedy at law.  Because of the relatively small size of the individual Class member's claims, it is likely that only a few Class members could afford to seek legal redress for IKO's conduct.  Further, the cost of litigation could well equal or exceed any recovery.  Absent a class action, Class members will continue to incur damages without remedy.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment would conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

### ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

78.    IKO knew or reasonably should have known the Shingles were defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiffs and the general public, while continually marketing the Shingles as dependable products.  Defendants' acts of fraudulent concealment include failing to disclose that its Shingles were defectively manufactured and would deteriorate in less than their expected lifetime, leading to damage to the very structures they were purchased to protect.

79.    Because the defects in the Shingles are latent and not detectable until manifestation, Plaintiffs and the Class members were not reasonably able to discover their Shingles were defective and unreliable until after installation, despite their exercise of due diligence.

80.    Plaintiffs had no reasonable way to discover this defect until shortly before Plaintiffs filed this complaint.

81.    Defendants had a duty to disclose that its Shingles were defective, unreliable and inherently flawed in their design and/or manufacture.

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Breach of Express Warranty)

82.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 81 of this Complaint.

83.     Defendants marketed and sold their Shingles into the stream of commerce with the intent that the Shingles would be purchased by Plaintiffs and members of the Class.

84.     Defendants expressly warranted that its Shingles are permanent, impact resistant, and would maintain their structural integrity.  Defendants' representations through its written warranties regarding the durability of, and the quality of the Shingles created express warranties which became part of the basis of the bargain Plaintiffs and members of the Class entered into when they purchased the Shingles.

85.     Express warranties created by IKO go beyond the limited warranties IKO relies upon. IKO also creates express warranties on the Shingles packaging and in product brochures and marketing materials.

86.     Defendants expressly warranted that the structural integrity of the Shingles purchased by Plaintiffs and Class members would last at least 20 years and as long as a lifetime.

87.     Defendants breached their express warranties to Plaintiffs and the Class in that Defendants' Shingles are neither permanent nor impact resistant and did not, and do not, maintain their structural integrity and perform as promised.  Defendants' Shingles crack, split, curl, warp, discolor, delaminate, blow off the roof, deteriorate prematurely, and otherwise do not perform as warranted by Defendants; and they have caused or are causing damage to the underlying roof elements, structures or interiors of Plaintiffs' and Class members' homes, residences, buildings and structures.

88.     Defendants' warranties fail their essential purpose because they purport to warrant that the Shingles will be free from structural breakdown for as much as 20 years to a lifetime when, in fact, Defendants' Shingles fail far short of the applicable warranty period.

89.     Moreover, because the warranties limit Plaintiffs' and Class members' recovery to replacement of the Shingles piece by piece, with replacement labor not included, Defendants' warranties are woefully inadequate to repair and replace failed roofing, let alone any damage suffered to the underlying structure due to the inadequate protection provided by the IKO Shingles.  The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

90.     The limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

91.     Defendants have denied or failed to pay in full the warranty claims or has not responded to warranty claims.

92.     As a result of Defendants breach of its express warranties, Plaintiffs and the Class have suffered actual damages in that they purchased and installed on their homes and other structures an exterior roofing product that is defective and that has failed or is failing prematurely due to moisture penetration.  This failure has required or is requiring Plaintiffs and the Class to incur significant expense in repairing or replacing their roofs.  Replacement is required to prevent on-going and future damage to the underlying roof elements, structures or interiors of Plaintiffs' and Class members' homes and structures.

93.     Plaintiffs on behalf of themselves and all others similarly situated, demand judgment against Defendants for compensatory damages for themselves and each member of the Class, for the establishment of the common fund, plus attorney's fees, interest and costs.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Breach of Implied Warranties of Merchantability and
### Fitness for a Particular Purpose)

94.     Plaintiffs incorporate by reference each of the allegations contained in Paragraphs 1 through 93 of this Complaint.

95.     At all times mentioned herein, Defendants manufactured and/or supplied IKO Shingles, and prior to the time said Shingles were purchased by Plaintiffs, and Defendants impliedly warranted to Plaintiffs, and to Plaintiffs' agents, that the product was of merchantable quality and fit for the use for which it was intended.

96.     Plaintiffs and their agents relied on the skill and judgment of the Defendants in using the aforesaid product.

97.     The product was unfit for its intended use and it was not of merchantable quality, as warranted by Defendants in that it had propensities to break down and fail to perform and protect when put to its intended use.  The aforesaid product did cause Plaintiffs and Class members to sustain damages as herein alleged.

98.     The product was similarly unfit for its particular purpose.  IKO manufactured its Shingles in a cold weather climate, and distributed, marketed, and sold the Shingles in cold weather climates.  IKO knew, or should have known, that its Shingles would be subjected to sub-zero temperatures, snow, and sleet and that the Shingles would be subjected to freeze-thaw cycles for a substantial period each year.

99.     After Plaintiffs were made aware of their damages as a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

100.    IKO failed to provide adequate remedy and added additional terms to the warranties which independently cause the purported warranty to fail its essential purpose, thereby permitting remedy under implied warranties.

101.    As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

102.    Plaintiffs on behalf of themselves and all others similarly situated, demand judgment against Defendants for compensatory damages for themselves and each member of the Class, for establishment of the common fund, plus attorney's fees, interest and costs.

### THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

**(Violation of Massachusetts Consumer Protection Law)**

103.    Plaintiff incorporates by reference each of the allegations contained in Paragraphs 1 through 102 of this Complaint.

104.    The conduct described in this Complaint constitutes a violation of Massachusetts Consumer Protection Law, Massachusetts General Laws Chapter 93A, et seq.

105.    IKO engaged in unfair or deceptive practices in violation of violation of Massachusetts Consumer Protection Law, Massachusetts General Laws Chapter 93A, et seq. (hereinafter, "CPL"), when it (1) represented the Shingles were durable and free of defects when, at best, it lacked credible evidence to support those claims, and, at worst, knew the Shingles would fail prematurely, were not suitable for use as an exterior roofing product, and otherwise were not as warranted and represented by IKO; (2) failed to disclose to, or concealed from, consumers material facts about the defective nature of the Shingles; (3) failed to disclose its own knowledge of the defective nature of the Shingles; and (4) limited its warranty obligations in an

unfair and unconscionable way in light of its failure to disclose the defective nature of the Shingles.

106.    IKO either knew or should have known its Shingles were defective, would fail prematurely and were not warranted and represented by Defendants.

107.    IKO's conduct and omissions described herein repeatedly occurred in IKO's trade or business and were likely to deceive a substantial portion of the consuming public.

108.    The facts concealed or not disclosed by IKO are material facts in that Plaintiffs and any reasonable consumer would have considered those facts important in deciding whether to purchase the Shingles or purchase homes or structures with roofs constructed with the Shingles.   Had Plaintiffs and the Class known the Shingles were defective and would fail prematurely they would not have purchased the Shingles or they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk or simply avoided the risk all together by purchasing different shingles.

109.    Defendants intended that Plaintiffs and the Class would rely on the deception by purchasing its shingles, unaware of the undisclosed material facts.   This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes

110.     IKO's unlawful conduct is continuing, with no indication that IKO will cease.

111.    As a direct and proximate result of the deceptive, misleading, unfair and unconscionable practices of Defendants set forth above, Plaintiffs and Class members have been injured.

112.    As a result of these statutory violations of law, Plaintiffs and the members of the Class are entitled to receive equitable relief in such form as the Court may deem appropriate to correct or prevent such misconduct and remedy their injuries (including but not limited to,

injunctive relief, equitable restitution, accounting, and other relief), damages, as well as costs and attorney's fees.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Breach of Contract)

113.     Plaintiff incorporates by reference each of the allegations contained in Paragraphs 1 through 112 of this Complaint.

114.     Plaintiffs and the Class Members have entered into certain contracts and warranty agreements with Defendants, including an express warranty.  Pursuant to these contracts and agreements, including the express warranty, Defendants would provide Plaintiffs and the Class members with Shingles that were of merchantable quality and fit for the use for which they were intended.  Defendants were further obligated pursuant to the express warranty to repair or replace any defects or problems with the Shingles that Plaintiff and the Class members experienced.  In exchange for these duties and obligations, Defendants received payment of the purchase price for these Shingles from Plaintiffs and the Class.

115.     Plaintiffs and the Class satisfied their obligations under these contracts, warranties, and agreements.

116.     Defendants failed to perform as required by the express warranty and breached said contracts and agreements because they provided Plaintiffs and the Class with Shingles that were defective and unfit for their intended use and failed to appropriately repair or replace the Shingles.

117.     As a result of the foregoing, Plaintiffs and the Class Members are entitled to compensatory damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Fraudulent Concealment)

118.    Plaintiffs and the Class incorporate by reference each of the allegations contained in Paragraphs 1 through 117 of this Complaint.

119.    At all times mentioned herein, Defendants, through its experience, were in a position of superiority to Plaintiffs and the class members and as such had a duty and obligation to disclose to Plaintiffs the true facts and their knowledge concerning the IKO Shingles; that is that said product was defective, would prematurely fail, and otherwise were not warranted and represented by Defendants.  Defendants made the affirmative representations as set forth in this Complaint to Plaintiffs, the Class, and the general public prior to the dates Plaintiffs purchased the IKO Shingles, while at the same time concealing the material defects described herein.  All of these facts were material to consumers' (such as Plaintiffs') purchase decisions.

120.    The material facts concealed or not disclosed by IKO to Plaintiffs and the Class are material facts in that a reasonable person would have considered those facts to be important in deciding whether or not to purchase IKO's Shingles.

121.    At all times mentioned herein, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs and with the intent to defraud as herein alleged.

122.    At all times mentioned herein, Plaintiffs and members of the Class reasonably relied on Defendants to disclose to those material facts as set forth above.  If Defendants had disclosed the above facts to Plaintiffs and Class and they had been aware of said facts, they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk or simply avoided the risk all together by purchasing different shingles.

123.    IKO continued to conceal the defective nature of its Shingles even after members of the Class began to report problems.  Indeed, IKO continues to cover up and conceal the true nature of the problem.

124.    As a result of the previous and continued concealment or suppression of the facts set forth above, Plaintiffs and the Class members sustained damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Negligence)

125.    Plaintiffs and the Class incorporate by reference each of the allegations contained in Paragraphs 1 through 124 of this Complaint.

126.    Defendants had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Shingles.

127.    Defendants breached their duty to Plaintiffs and the Class by designing, manufacturing, advertising and selling to Plaintiffs and the Class a product that is defective and will fail prematurely, and by failing to promptly remove the Shingles from the marketplace or to take other appropriate remedial action.

128.    Defendants knew or should have known that the Shingles were defective, would fail prematurely, were not suitable for use as an exterior roofing product, and otherwise were not warranted and represented by Defendants.

129.    As a direct and proximate cause of Defendants' negligence, Plaintiffs and the Class have suffered actual damages in that they purchased and installed on their homes, residences, buildings and other structures an exterior roofing product that is defective and that fails prematurely due to moisture penetration.  These failures have caused and will continue to

cause Plaintiffs and the Class to incur expenses repairing or replacing their roofs as well as the resultant, progressive property damage.

130.    Plaintiffs on behalf of himself and all others similarly situated, demand judgment against Defendants for compensatory damages for themselves and each member of the Class, for establishment of a common fund, plus attorney's fees, interest and costs.

## SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Unjust Enrichment)

131.    Plaintiffs and the Class incorporate by reference each of the allegations contained in Paragraphs 1 through 130 of this Complaint.

132.    Substantial benefits have been conferred on Defendants by Plaintiffs and the Class by purchasing IKO shingles, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

133.    IKO either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the IKO Shingles would perform as represented and warranted.   For IKO to retain the benefit of the payments under these circumstances is inequitable.

134.    Defendants' acceptance and retention of these benefits under the circumstances make it inequitable for Defendants to retain the benefit without payment of value to the Plaintiffs and the Class.

135.    Plaintiffs and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

136.    As a direct and proximate consequence of Defendants' improper conduct, Plaintiffs and the Class members were injured.  Defendants have been unjustly enriched, and in equity, should not be allowed to obtain this benefit.

## EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Declaratory and Injunctive Relief)

137.    Plaintiffs and the Class incorporate by reference each of the allegations contained in Paragraphs 1 through 136 of this Complaint.

138.    Plaintiffs, on behalf of themselves and putative Class members, seek a Court declaration of the following:

a.  All Defendants' Shingles manufactured from 1979 until the present have defects which cause them to fail and leak, resulting in water damage to property and the necessity of the removal and replacement of the Shingles;

b.  All Defendants' Shingles manufactured from 1979 until the present have a defect in workmanship and material that causes failures;

c.  Defendants knew of the defects in their Shingles and that the limitation contained in the warranties are unenforceable;

d.  Defendants shall re-audit and reassess all prior warranty claim on their Shingles, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

e.  Defendants shall establish an inspection program and protocol to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether a Shingle failure is manifest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against IKO as follows:

a.      Enter an order certifying the proposed Class (and subclasses, if applicable), designate Plaintiffs as the named Class Representatives of the class, and designating the undersigned as Class Counsel;

b.      Declare that IKO is financially responsible for notifying all Class members of the problems with IKO products;

c.      Enter an order enjoining IKO from further deceptive advertising, marketing, distribution, and sales practices with respect to IKO products, and requiring IKO to remove and replace Plaintiffs' and Class members' roofs with a suitable alternative roofing material of Plaintiffs' and Class members' choosing

d.      Enter an award in favor of Plaintiffs and Class that includes compensatory, exemplary or punitive damages, and statutory damages, including interest thereon, in an amount to be proven at trial;

e.      Declare that IKO must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of IKO materials, or order IKO to make full restitution to Plaintiffs and the members of the Class;

f.      Enter an award of attorneys' fees and costs, as allowed by law;

g.      Enter an award of pre-judgment and post-judgment interest, as provided by law;

h.      Grant Plaintiffs and the Class leave to amend the Complaint to confirm to the evidence produced at trial; and

   f.  Grant such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

  Plaintiffs, on behalf of themselves and the members of the Class, hereby demand a trial by jury of any and all issues in this action so triable.

April 3, 2012       CUNEO, GILBERT & LADUCA, LLP

               /s/ Matthew E. Miller
             Matthew E. Miller, BBO No. 559353
             Charles J. LaDuca
             Michael J. Flannery
             Brendan S. Thompson
             507 C Street NE
             Washington, DC 20002
             Telephone:  202-789-3960

| | | |
|---|---|---|
| Robert K. Shelquist | Clayton D. Halunen | Charles E. Schaffer |
| LOCKRIDGE GRINDAL | HALUNEN & | LEVIN FISHBEIN |
| NAUEN PLLP | ASSOCIATES | SEDRAN & BERMAN |
| Suite 2200 | 1650 IDS Center | Suite 500 |
| 100 Washington Avenue South | 80 South Eighth Street | 510 Walnut Street |
| Minneapolis, MN 55401 | Minneapolis, MN 55402 | Philadelphia, PA 19106 |
| (612) 339-6900 | (612) 605-4098 | (215) 592-1500 |
| (612) 339-0981 (fax) | (612) 605-4099 (fax) | (215) 592-4663 (fax) |
| | | |
| Christopher N. Ellis | Kim D. Stephens | |
| Jon D. Robinson | TOUSLEY BRAIN | |
| BOLEN ROBINSON & ELLIS | STEPHENS | |
| 2nd Floor | 1700 Seventh Avenue | |
| 202 South Franklin | Suite 2200 | |
| Decatur, IL 62523 | Seattle, WA 98101 | |
| (217) 429-4296 | (206) 682-5600 | |
| (217) 329-0034 (fax) | (206) 682-2992 (fax) | |

Michael A. McShane
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
(415) 568-2555
(415) 576-1776 (fax)

Shawn J. Wanta
BAILLON THOME
JOZWIAK MILLER &
WANTA
222 South Ninth St.
Suite 2955
Minneapolis, MN 55402
(612) 252-3570
(612) 252-3571 (fax)

Eric D. Holland
R. Seth Crompton
HOLLAND, GROVES,
SCHNELLER & STOLZE
300 M. Tucker Blvd.
Suite 801
St. Louis, MO 63101
(314) 241-8111
(314) 241-5554 (fax)