Judgment in a Civil Case (02/11)

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| | |
|---|---|
| IN RE: IKO ROOFING SHINGLE ) | **Case No. 09-md-2104-JES** |
| **PRODUCTS LIABILITY LITIGATION** ) | **MDL Docket No. 2104** |
| ) | |
| ) | |
| **THIS RELATES TO: ALL CASES** ) | |
| **(09-cv-2293, 09-cv-2298, 09-cv-2295,** ) | |
| **09-cv-2307, 09-cv-2315, 09-cv-3281,** ) | |
| **10-cv-2255, 12-cv-2103, 12-cv-3082,** ) | |
| **12-cv-2250, 14-cv-2044, 13-cv-2280,** ) | |
| **14-cv-2071, 14-cv-2067, 14-cv-2073,** ) | |
| **14-cv-2270, 15-cv-2132, 15-cv-2137,** ) | |
| **16-cv-2217)** | |

## JUDGMENT IN A CIVIL CASE

☒ **DECISION BY THE COURT**.  This action came before the Court and a decision has been rendered.

This Court, having considered the Settlement Agreement dated October 3, 2018, the Motions for Final Approval of the Settlement Agreement, and Plaintiffs' Motion for Approval of an Award of Attorneys' Fees; having held a Final Approval Hearing regarding the Settlement on March 13, 2019; and having considered the record of these proceedings, the representations and argument of counsel for the moving parties, and the requirements of law, hereby **ORDERS AND ADJUDGES** that all claims asserted against IKO Inc. on behalf of the class members are dismissed with prejudice. The Court maintains jurisdiction over this matter only for the purposes of enforcing the approved Settlement Agreement. IKO Inc., the Class Representatives, and the Members of the Class are directed to comply and perform in accordance with the terms of the approved Settlement Agreement, which provides the following:

Judgment in a Civil Case (02/11)

## 1. DEFINITIONS

1.1. As used in this Agreement, the following terms shall have the following meanings:

 a. "Agreement" means this Agreement of Compromise and Settlement and all Exhibits attached to it.

 b. "CAFA Notice" means the notice to be sent by the Notice Provider to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

 c. "Claimant" means a Settlement Class Member who submits a Homeowner's Inquiry Survey under the terms of this Agreement.

 d. "Claims Administrator" means IKO's Warranty Department, which shall administer the Claims Program as set forth herein.

 e. "Claims Program" means the program set forth in Section 6.
 f. "Class Counsel" means the Interim Co-Class Counsel appointed in the Court's Order dated March 10, 2010.

 g. "Class Notice" means the notices substantially in the forms attached as Exhibit 2 to this Agreement.

 h. "Class Period" means the time period from January 1, 1978 through the date of this Agreement.

 i. "Effective Date" means either: (a) the date of the Final Approval Order of this Agreement by the Court if no objections are timely filed; (b) the expiration date of the time for filing notice of any appeal from the Final Approval Order by the Court if objections are filed but no appeal is filed; or (c) if an appeal is filed, the latest of: (i) the date of final affirmance of the Final Approval Order, (ii) the expiration of the time for filing a petition for writ of certiorari to review the Final Approval Order if affirmed and, if the certiorari is granted, the date of final affirmance of the Final Approval Order following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Final Approval Order or the final dismissal of any proceeding on certiorari to review the Final Approval Order that has the effect of confirming the Final Approval Order.

 j. "Final Approval Hearing" means the hearing required by Federal Rule of Civil Procedure 23(e), at which time the Parties will request the Court to approve the fairness, reasonableness and adequacy of the terms and conditions of the proposed Settlement Agreement and to enter a Final Approval Order.

 k. "Final Approval Order" means the order entered by the Court following the Final Approval Hearing.

 l. "Homeowner's Inquiry Survey" means the survey a Settlement Class Member must submit to be eligible for a remedy under this Agreement

m. "IKO" means the IKO Defendants and any of their subsidiaries, affiliates, parent companies, successors, predecessors, assigns or divisions, including, but not limited to, IKO Production, Inc.; IKO Pacific Inc.; IKO Manufacturing Inc.; IKO Midwest Inc.; IKO Industries Inc.; IKO Sales Inc.; IKO Chicago Inc.; IKO Monroe Inc.; Delaware Asphalt Products, Inc.; Liberty Roofing Center Inc.; Liberty Roofing Holdings Inc.; Blair Rubber Company; Hyload Inc.; Martin Rubber Company Canadian Companies; IKO Industries Ltd.; IKO Sales Limited; CanRoof Corporation Inc.; I.G. Machine & Fibers Ltd.; and Winniman Land Company Limited; and, for each of them, any of their current or former officers, directors, employees, shareholders or owners.

n. "Litigation" means MDL 2104 and includes all cases that were transferred to or coordinated or consolidated with MDL 2104, as well as all lawsuits that were filed in the United States District Court for the Central District of Illinois against one or more of the IKO Defendants relating to the Shingles.

o. "Named Plaintiffs" means current and former plaintiffs Augustine, B. Curler, Zanetti, Trongone, Dion, Greenough, Hight, Pauly, Cobb, Taylor, Thibeault, Huckabee, L'Heureux, Bakken, Walters, Noskey, Machuzak, Brown, Londergan, Czuba, Cantwil, Mesheau, and Delle Chiaie.

p. "Parties" means the Named Plaintiffs and IKO Defendants.

q. "Preliminary Approval Order" means the Order of Preliminary Approval of Settlement.

r. "Released Persons" means IKO, their agents, insurers, attorneys, and representatives, and any person or entity that distributed the Shingles, excluding installers in their role as installers, but not as sellers.

s. "Releasing Parties" means all Settlement Class Members.

t. "Settlement Class" means all individuals and entities that, as of the date of this Agreement, own or owned homes, residences, buildings, or other structures located in the United States upon which the Shingles were installed. Excluded from the Settlement Class are:

> i. All individuals and entities who filed a claim concerning their Shingles in any court of law, if that claim has been resolved with a final judgment or order, whether or not favorable to the claimant;

> ii. Individuals and entities who signed a goodwill release following the submission of a warranty claim to IKO, unless the warranty claim was for Shingles on less than the whole roof and IKO made a settlement payment for less than the whole roof;

> iii. Individuals and entities who validly opt out of the Settlement in a timely manner;

> iv. IKO, any entity in which IKO has a controlling interest, any entity which has a controlling interest in IKO, and IKO's legal representatives, assigns, and successors;

> v. Counsel of record (and their respective law firms) for the Parties; and

vi. The Judge to whom this Litigation is assigned, any member of the Judge's staff, and any member of the Judge's immediate family.

u. "Settlement Class Member" means a member of the Settlement Class who is not expressly excluded by Sections 1.1.t.(i)-(vi) above. The words "he" or "his" as used in the Agreement may refer to a Settlement Class Member, regardless of gender, to an entity, or to a political subdivision.

v. "Shingles" means organic asphalt roofing shingles sold under any brands of IKO, including, but not limited to, the following: Aristocrat, Aristocrat (Imperial), Armour Plus, Armour Plus 20, Armour Seal, AM Armour Seal, Armour Seal Supreme, Armour Seal (Metric), Cathedral XL, Crowne 30, Imperial Seal, Imperial Superplus, Seville, Superplus, AM Superplus, Superseal, Supreme, Royal Victorian, Total, New Englander, Quantum Skyline, Vista, Renaissance, Renaissance XL, Armour Lock, Armour Tite, Superlock, Suretite, Ultralock, Ultralock 25, Chateau, Chateau Ultra Shadow, and Harvard.

## 2. RECITALS

2.1. Named Plaintiffs filed these actions seeking to recover damages on behalf of themselves and a class of persons or entities in the U.S. who own or had owned homes or other buildings with allegedly defective Shingles or Shingles that did not last the duration of the limited warranties applicable to the Shingles.

2.2. On July 14, 2009, the United States Judicial Panel on Multidistrict Litigation ("JPMDL") issued an Order transferring to the United States District Court for the Central District of Illinois (the "Court") all of the actions complaining about the Shingles filed in a federal district court, find ing that the pending cases "involve common questions of fact, and that centralization under Section 1407 in the Central District of Illinois will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." Specifically, the JPMDL transferred to this Court for coordinated pretrial treatment: Zanetti v. IKO (D. N.J.); Czuba v. IKO (W.D.N.Y.); McNeil v. IKO (N.D. Ill); Hight v. IKO (W.D. Wash.); William Curler v. IKO (S.D. Ill); and Belinda Curler v. IKO (C.D. Ill.). Following the transfer of these cases, the JPMDL transferred add itional cases to MDL Docket No. 2104, including: Londergan v. IKO (E.D. Mich.); Huckabee v. IKO (C.D. Ill.); Taylor and Thibeault v. IKO (D. Mass.); Cobb v. IKO (C.D. Ill.); L 'Heureux v. IKO (D. Me.); Bakken v. IKO (W.D. Wisc.); Walters v. IKO (W.D. Pa.); Noskey v. IKO (W.D. Mich.); Machuzak v. IKO (M.D. Pa.); and Brown v. IKO (W.D.N.Y.). The JPMDL later transferred two individual (non-class) actions to the Court: Mesheau v. IKO, No. 3: 15-cv-30042 (D. Mass.), and Chiaie v. IKO, No.  1 :15-cv-00204 (D.N.H.).

2.3. A Fourth Consolidated Amended Complaint was filed on January 21, 2011 (the "Complaint").

2.4. IKO filed Answers to the Complaint on or after February 8, 2011.

2.5. IKO denies all allegations of fault, wrongdoing, or liability made by the Named Plaintiffs or any of the plaintiffs in the other actions consolidated or coordinated in the Litigation.

2.6. Since at least 2009, Class Counsel have conducted an extensive investigation of the facts and circumstances related to the Litigation, including consulting experts, written discovery, deposition

Judgment in a Civil Case (02/11)

of Parties, interviewing potential witnesses, conducting inspections of the properties of Named Plaintiffs and other Settlement Class Members, reviewing the information and evidence that they have obtained regarding the facts and circumstances alleged in the Complaint, and researching and studying the legal principles applicable to the issues of liability, damages, jurisdiction, and procedure involved in the cases.

2.7. The Parties have engaged in extensive, arm's-length negotiations regarding the settlement of claims involving the Shingles for over five years, including in-person mediation sessions with the Honorable Wayne R. Andersen (Ret.) on May 4, 2016 and January 4, 2018, and multiple telephonic conferences with Judge Andersen.

2.8. The Named Plaintiffs, through Class Counsel, have evaluated the time and expense that will be necessary to prosecute these cases to final judgment, the delays that are likely before any judgment may be entered, and the uncertainty inherent in predicting the outcome of any complex litigation such as this and, based upon such evaluation, have concluded that further proceedings in these actions are likely to be protracted, complex and expensive, and that the outcome is highly uncertain.

2.9. Without conceding any lack of merit of any of their claims, the Named Plaintiffs and Class Counsel have concluded that it is in the best interests of the Settlement Class Members to settle these actions on the terms set forth herein, and that the settlement with the IKO Defendants embodied in this Agreement is fair, reasonable, and adequate to the Named Plaintiffs and the Settlement Class Members.

2.10. While denying any fault, wrongdoing, or liability, and relying on the provisions of this Agreement that the settlement embodied herein shall in no event be construed as or deemed to be evidence of an admission or a concession on the part of the IKO Defendants of any fault, wrongdoing, or liability whatsoever, or that any of the allegations in the Complaint are true, and without conceding any infirmity in its defenses, the IKO Defendants consider it desirable to enter into this Agreement in order to avoid further expense and to dispose of burdensome and protracted litigation.

2.11. For the above reasons, it is hereby agreed by and between the IKO Defendants and the Named Plaintiffs, acting for themselves and the Settlement Class that, except as specifically stated to the contrary in this Agreement, all of the allegations, claims, demands, causes of action, and liabilities, which have been or could have been asserted by the Named Plaintiffs against IKO relating to, arising out of, or in connection with any of the allegations made in the Complaint or the Litigation, shall be settled and compromised, and these actions shall be dismissed with prejudice, according to the terms and conditions set forth below in this Agreement.

## 3. CLASS CERTIFICATION

3.1. The Parties agree that, for purposes of settlement only, certification of the Settlement Class as defined above in Section 1 is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3).

Judgment in a Civil Case (02/11)

## 4. RELIEF APPLICABLE TO CLASS MEMBERS

4.1. The IKO Defendants will extend all existing (non-expired) Shingle limited warranties of Settlement Class Members by five (5) years. Each of these warranty extensions will be prorated at the same reduction factor as the first month of the final year of the existing limited warranty.

4.2. In addition, the IKO Defendants will cap the reduction figure on all Shingle limited warranties at the first month of the final year of the limited warranty.

4.3. In addition, if a Settlement Class Member's limited warranty expired five (5) or fewer years prior to the date of this Agreement, then the IKO Defendants will provide a new limited warranty for five (5) years after the date of expiration of the Settlement Class Member's limited warranty on the same terms as the expired limited warranty. Each of these new replacement limited warranties will be prorated at the same reduction factor as the first month of the final year of the expired limited warranty.

4.4. In addition, if a Settlement Class Member filed a warranty claim following the filing of the initial lawsuit on April 29, 2009, and the IKO Defendants made a written offer to resolve that warranty claim, then, upon submission of a Homeowner's Inquiry Survey in accordance with Section 6 of this Agreement, the IKO Defendants will pay the greater of either (i) that original offer, or (ii) the amount that would be payable upon submission of the Homeowner's Inquiry Survey assuming the Settlement Class Member originally had a limited warranty that was five years longer than the Settlement Class Member's actual limited warranty.

4.5. The IKO Defendants will adhere to their usual procedures for handling warranty claims in the ordinary course of business.

4.6. In addition, the IKO Defendants will clarify in their goodwill release that the scope of the release only extends to claims related to the portion of the claimant's roof for which the IKO Defendants offered a payment or replacement shingles.

4.7. The IKO Defendants will allow Settlement Class Members who submit warranty claims in accordance with Section 6 of this Agreement to choose either the cash value of the replacement shingles as determined under the terms of this Agreement or replacement fiberglass asphalt roofing shingles of equal or greater value.

## 5. CLAIMS ELIGIBLE FOR A REMEDY UNDER THE SETTLEMENT

5.1. A Settlement Class Member's warranty claim is not eligible for relief under this Agreement if the claim is based upon Shingles that were installed either before or after the Class Period.

## 6. CLAIMS PROGRAM PROCEDURES

6.1. The Claims Program will commence in accordance with the terms and conditions of this Agreement no later than 10 days after the Effective Date.

6.2. All claims under the Settlement will be commenced by the Settlement Class Member submitting to the Claims Administrator a Homeowner's Inquiry Survey, attached as Exhibit 1.A. and all required documentation in accordance with the procedures set forth in Exhibit l.B. Any Settlement Class Member may visit the settlement website to download a Homeowner's Inquiry Survey so that it may be mailed to the Claims Administrator. Settlement Class Members who do not have access to the website may contact the Claims Administrator by telephone or in writing to request a Homeowner's Inquiry Survey.

6.3. In order to recover under this Claims Program, a Settlement Class Member requesting a remedy under the Agreement shall provide the information required by this Agreement, including the Exhibits.

6.4. Claimants shall be required to sign any Homeowner's Inquiry Survey and the other documents required by the Homeowner's Inquiry Survey and the procedures in Exhibit l.B. To the extent Claimants have not already replaced their Shingles, Claimants further agree to cooperate with the Claims Administrator and permit inspection of the home or structure(s) if deemed necessary by the Claims Administrator.

6.5. Claimants may not utilize third party claim services or similar services to submit claims in the Claims Program established by this Agreement, except that a Settlement Class Member may engage a bona fide contractor to assist with necessary measurements or product identification. Settlement Class Members shall not be permitted to assign claims under the Claims Program to any person who assists with their claim under this Section.

6.6. A Claimant who receives and cashes a payment has accepted the offer under this Section and may not appeal the Claims Administrator's decision with respect to his claim.

6.7. If the Claims Administrator denies a claim, the Claimant shall have the right to appeal the denial by filing a lawsuit in a small claims court within one year of receipt of notice of a complete or partial denial of the claim. The Settlement Class Member in any such action will be strictly limited to the relief available under the terms of the applicable IKO limited warranty. The Settlement Class Members expressly waive any and all of their rights to join with any other Settlement Class Member in such a lawsuit, consolidate two or more of such lawsuits, or assert claims on behalf of any class or subclass.

6.8. The IKO Defendants will provide to Class Counsel annual notice for five years of the number of warranty claims paid and denied annually for Settlement Class Members.

6.9. In no event shall IKO or Class Counsel have any liability for claims of wrongful or negligent conduct on the part of the Claims Administrator, or any of its agents, employees or contractors.

## 7. ATTORNEYS' FEES AND INCENTIVE PAYMENTS TO NAMED PLAINTIFFS

7.1. Class Counsel shall receive an award of attorneys' fees and costs in the amount of seven million, five hundred thousand dollars ($7,500,000).

7.2. IKO agrees that the Named Plaintiffs shall be paid service awards over and above any amounts to which they which may otherwise be entitled under the Agreement to compensate them for their roles and services in connection with the Litigation. The service award shall be subject to Court approval and shall be paid from the amount awarded to Class Counsel for attorneys' fees and costs. The amount of the service award paid to each Named Plaintiff shall be as follows: $7,500 to Augustine; $7,500 to B. Curler; $7,500 to Zanetti; $7,500 to Trongone; $7,500 to Dion; $7,500 to Greenough; $7,500 to Hight; $7,500 to Pauly; $3,000 to Cobb; $3,000 to Taylor; $3,000 to Thibeault; $3,000 to Huckabee; $3,000 to L'Heureux; $3,000 to Bakken; $3,000 to Walters; $3,000 to Noskey; $3,000 to Machuzak; $3,000 to Brown; $7,500 to Londergan; $7,500 to Czuba; $7,500 to Cantwil; $7,500 to Mesheau; and $3,000 to Delle Chiaie. For the sake of clarity, the maximum cumulative amount that IKO may be required to pay to Class Counsel and the Named Plaintiffs under the terms of this Settlement is seven million, five hundred thousand dollars ($7,500,000).

## 8. THE PRELIMINARY APPROVAL ORDER

8.1.     The Parties shall submit this Agreement to the Court within seven (7) days of execution of this Agreement and request that the Court enter the Preliminary Approval Order in substantially the form of Exhibit 3 hereto.

## 9. NOTICE OF PROPOSED SETTLEMENT

9.1. Notice of the Settlement to Settlement Class Members shall be provided pursuant to the Preliminary Approval Order of the Court. All of the costs of the notice, including all fees and expenses of the Notice Provider, shall be paid by the IKO Defendants.

9.2. Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), the CAFA-Notice shall be sent by the Notice Provider to appropriate federal and state officials pursuant to the proper requirements.

9.3. IKO will engage KCC/Gilardi & Co. LLC as the Notice Provider. The Parties and their counsel shall have no liability whatsoever for the acts or omissions of the Notice Provider.

9.4. Such notice shall include, but not be limited to: (a) publication of a summary notice pursuant to Section 9.5; (b) mailing of a long-form notice pursuant to Section 9.6; (c) the establishment of a settlement website pursuant to Section 9.9; and (d) the issuance of a press release pursuant to Section 9.7. The text of the notices and the mechanisms for distributing the notices shall be subject to the approval of the Court.

9.5. A Summary notice, substantially in the form attached hereto as Exhibit 2(a), shall be published, or in such other form as approved by the Court.

9.6. A long-form notice, substantially in the form attached hereto as Exhibit 2(b), or in such other form as approved by the Court, shall be mailed, first class postage prepaid, to each Settlement Class Member identified by the IKO Defendants through reasonable efforts as having Shingles, including Settlement Class Members who have submitted a warranty claim for their Shingles. The IKO Defendants shall provide the Notice Provider with all of this information within ten (10) business days after issuance of the Preliminary Approval Order. In the event that any Class Notice

mailed to a potential Settlement Class Member is returned as undeliverable a second time, then no further mailing shall be required. The Notice Provider will promptly log each Class Notice that is returned as undeliverable and shall provide copies of the log to Class Counsel and defense counsel. The Notice Provider shall take reasonable steps to re-mail all undeliverable long-form notices to updated addresses provided by the National Change of Address Database maintained by the United States Post Office or obtained by other reasonable means.

9.7. A Press Release, substantially in the form of Exhibit 4, shall be released through PR Newswire. The Press Release must be approved by IKO and Class Counsel prior to publication.

9.8. At least five (5) business days before the date of the Final Approval Hearing, the Notice Provider shall file proof, by affidavit or declaration, of the aforesaid publications and mailings.
9.9. No later than the publication of the first notice to be published pursuant to this Section, the Notice Provider shall cause an internet website concerning the Settlement to be established, which will remain active for at least six years after the Effective Date. The internet address of the website shall be included in the published notices. The website shall provide: (a) generalized information concerning dead lines for opting out of the Settlement and the dates of relevant Court proceedings, including the Final Approval Hearing; (b) electronic copies of this Agreement; and (c) the long-form notice.

## 10. SETTLEMENT CLASS MEMBERS' RIGHT TO OPT OUT AND OBJECT

10.1. A Settlement Class Member may opt out of the Settlement Class.

a. Any Settlement Class Member may request to be excluded from the Settlement Class. A Settlement Class Member who wishes to opt out of the Settlement Class must do so no later than twenty-one (21) days prior to the Final Approval Hearing ("Opt-Out Date"). In order to opt out, a Settlement Class Member must send to the Notice Provider a written Request for Exclusion that is postmarked no later than twenty-one (21) days prior to the Final Approval Hearing. The Request for Exclusion must be personally signed by the Settlement Class Member requesting exclusion and contain a statement that indicates a desire to be excluded from the Settlement Class.

b. Any Settlement Class Member who does not file a timely written Request for Exclusion shall be bound by all subsequent proceedings, orders, and the Final Approval Order in the Litigation, even if he, she, or it has pend ing, or subsequently initiates, litigation, arbitration, or any other proceeding against IKO relating to the claims released in Section 13.

c. Any Settlement Class Member who properly requests to be excluded from the Settlement Class shall not: (a) be bound by any orders or judgments entered in the Litigation relating to the Agreement; (b) be entitled to any award from the Settlement, or be affected by the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Agreement.

d. The Notice Provider shall provide Class Counsel and IKO's Counsel with a final list of all Requests for Exclusion within five (5) business days after the Opt-Out Date. Named Plaintiffs filed the final list of all sixteen timely Requests for Exclusion at the Final Approval Hearing.

10.2. A Settlement Class Member may object to the Settlement. To exercise this objection right, the Settlement Class Member must provide written notice of the objection via first class mail to the Court, Class Counsel, and the IKO Defendants' counsel. The objection must bear the signature of the Settlement Class Member (even if represented by counsel), the Settlement Class Member's current address and telephone number, email address, if available, state the address(es) of the property or properties upon which the Shingles were installed, specify the number of units of residential property or other structures at each address containing Shingles, and state the exact nature of the objection and whether or not the Settlement Class Member intends to appear at the Final Approval Hearing. The objection must also contain a clear statement of the basis for the objection and a list of other class action settlements to which the Settlement Class Member or the Settlement Class Member's counsel has objected in the previous four years. Settlement Class Members who submit an objection may be subject to deposition or discovery. If the Settlement Class Member is represented by counsel, the objection shall also be signed by the attorney who represents the Settlement Class Member. Such objection must be postmarked or personally delivered on such schedule as the Court may direct. In seeking Preliminary Approval of this Settlement, the Parties will request that the deadline for submission of objections shall be set on a date approximately 45-60 days after the publication of the notices pursuant to Section 9. Objections sent by any Settlement Class Member to incorrect locations shall not be valid.

## 11. FINAL JUDGMENT OF DISMISSAL

11.1. At least ten (10) business days before the Final Approval Hearing, the Parties shall file a joint motion requesting that the Court grant final approval of the Settlement embodied in this Agreement and that the Court enter the Final Approval Order substantially in the form of Exhibit 5.

11.2. If the Court grants final approval of the Agreement, the Final Approval Order shall:

a. Provide that the Agreement is fair, reasonable and adequate to the members of the Settlement Class and direct that the Agreement be implemented in accordance with its terms;

b. Dismiss all the actions in the Litigation against the IKO Defendants, with prejudice;

c. Adjudge that each and every Settlement Class Member is deemed to have fully, finally, and forever released and discharged all Released Persons from any and all claims, demands, rights, liabilities, or causes of action, whether known or unknown, related to, in connection with, or arising out of the facts asserted in the Complaint or Litigation, or which could have been asserted in the Complaint or Litigation, which any member of the Settlement Class Member has, or may have in the future, and further shall permanently bar and enjoin the Settlement Class Members from asserting such claims directly or indirectly against IKO, except as provided in Section 6.7;

d. Approve such award of attorneys' fees and expenses for Class Counsel (not to exceed $7,500,000) as the Court may award;

e. Approve such incentive payments to Named Plaintiffs (to be paid from the award of attorneys' fees and expenses for Class Counsel) as the Court may award;

Judgment in a Civil Case (02/11)

f. Provide that the form and manner of notice given to the Settlement Class Members fairly and adequately informed them of all material elements of this litigation and the proposed Agreement and constituted sufficient notice to the Settlement Class Members in accordance with Federal Rule of Civil Procedure 23 and Due Process requirements; and

g. Reserve jurisdiction over consummation and performance of the Agreement and administration of the Agreement, and retain the authority to permanently bar and enjoin any actions in contravention of this Agreement.

## 12. EFFECTIVE DATE

12.l. This Agreement and the obligations of the parties under this Agreement shall not become effective until, and are expressly conditioned upon, the occurrence of the Effective Date.

## 13. RELEASE

13.1.   Upon the Court's entry of the Final Approval Order, all Settlement Class Members, who have not properly and timely opted out of the Settlement Class pursuant to the terms of this Agreement, shall be conclusively deemed to have released and forever discharged (as by an instrument under seal without further act by any person, and upon good and sufficient consideration), on behalf of themselves and their agents (including homeowners' and condominium associations), heirs, executors and administrators, predecessors, successors, parent companies, subsidiaries, affiliates, attorneys, representatives, and assigns, the Released Persons from each and every claim of liability, including relief under federal law or the law of any state, which arises out of the sale, purchase, installation, and/or use of the Shingles during the Class Period, including without limitation all claims or liability on account of or related to damage to, malfunction of, or failure of performance of the Shingles which were alleged or could have been alleged in the complaints in the Litigation.  Such release will not release the Released Persons from: (a) any obligations that IKO has assumed under this Agreement; (b) any claim for bodily injury, including claims for pain or suffering; or (c) obligations incurred by IKO in settlements it has made with Settlement Class Members prior to the Effective Date.  The Releasing Parties expressly release all claims for penalties, consequential damages, punitive damages, exemplary damages, statutory damages, special damages, damages based upon a multiplication of compensatory damages, court costs, or attorneys' fees or expenses, which might otherwise have been made or could be made in the future.

13.2. This release includes all claims that the Settlement Class Members have or may hereafter discover including, without limitation, claims, injuries, damages, or facts in addition to or different from those now known or believed to be true with respect to any matter disposed of by this Agreement, with the limitations detailed in Section 13.I. By this Agreement, the Settlement Class Members have fully, finally and forever settled and released any and all such claims, injuries, damages, or facts whether known or unknown, suspected or unsuspected, contingent or non-contingent, past or future, whether or not concealed or hidden, which exist, could exist in the future, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, without regard to the subsequent discovery or existence of different or additional facts, with the limitations detailed in Section 13.1. The Settlement Class Members shall be deemed by the operation of the Final Approval Order to have acknowledged that the foregoing

waiver was separately bargained for and a key element of the settlement of which the releases herein are a part. The Settlement Class Members expressly and intentionally waive any and all rights and benefits which they now have or in the future may have related to matters arising from or in any way related to, connected with, or resulting from damage to, malfunction of, or failure of performance of the Shingles with the limitations detailed in Section 13.1.

13.3. The Releasing Parties specifically reserve any and all other claims and causes of action against any installers of the Shingles, but only in their role as installers not sellers.
13.4. It is the intent of the Parties that no Releasing Party shall recover, directly or indirectly, any sums for claims released by operation of this Agreement from the Released Persons, other than the remedy received under this Agreement. Therefore, none of the Released Persons shall have any obligation to make any payments to any non-parties by way of contribution or indemnification or for which a Releasing Party was eligible to receive a remedy under this Agreement.

a. Releasing Parties agree that in any action brought by a Releasing Party against any non-party arising out of or related to the same damage that gave rise to the Releasing Party receiving a remedy under this Agreement, the Releasing Party agrees that he shall only sue such non-party for that non-party's separate, severable fault.

b. The Parties agree that the provisions of this Agreement and any claim thereunder constitute a good faith settlement under California Civil Code §§ 877 and 877.6 and comparable laws in other states, that the Parties shall cooperate fully in any effort of the Released Persons to establish such good faith settlement before any court (including, without limitation, by joining in any motion or other procedure and providing declarations and other evidence to establish such good faith settlement where requested by any Released Person) and that all relief provided under this Agreement relates to claims arising out of or related to the Shingles.

c. If notwithstanding the intention of the Parties expressed therein, any release given by the Releasing Parties is not given its full effect by operation of law, then the Releasing Parties shall be deemed to have and do hereby transfer and assign to Released Persons all claims, if any, that were deemed not released, to the extent necessary to effectuate the intent of this Section.

d. Class Counsel shall cooperate with the Released Persons to ensure that the releases set forth in this Section are given their full force and effect and that Releasing Parties comply with their obligations set forth in this Agreement.

13.5. In the event that any Releasing Party seeks to invoke California Civil Code § 1542 which provides that "a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known to him must have materially affected his settlement with the debtor" (or any other like provision of law) in connection with the Shingles, the Releasing Parties and each of them now expressly waive the provision of California Civil Code § 1542 (and all other like provisions of law) to the full extent that these provisions may be applicable to this release. Each of the Releasing Parties hereby does and shall be deemed to, assume the risk that facts additional, different, or contrary to the facts, which each believes or understands to exist, may now exist or may be discovered after this Agreement becomes effective. Each of the Releasing Parties agrees that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing release, which

shall remain in full force and effect. Notwithstanding the general terms of the release, nothing in the release shall be construed to limit a state or governmental entity's ability to bring, continue, obtain judgment in, or enforce judgment in a law enforcement action against IKO when such action is based on or arises out of the events and circumstances that form the basis of this case.

## 14. EXCLUSIVE REMEDY; DISMISSAL OF ACTION; JURISDICTION OF COURT

14.1. Each and every Settlement Class Member submits to the jurisdiction of the Court and will be bound by the terms of this Settlement (including, without limitation, any and all releases).

14.2. This Agreement shall be the sole and exclusive remedy for any and all claims of Settlement Class Members against IKO arising from alleged damage to, malfunction of, or failure of performance of the Shingles, and upon entry of the Final Judgment Order by the Court, each Settlement Class Member shall be barred from initiating, asserting, or prosecuting any such claims against IKO, except as permitted in Section 6.7.

14.3. Upon the entry of the Final Approval Order, each of the actions filed, coordinated, or consolidated in the Litigation will be dismissed with prejudice.

14.4. The Court shall retain exclusive and continuing jurisdiction to interpret and enforce the terms, conditions, and obligations of this Agreement and the Court's orders and judgments. In the event of a breach by the IKO Defendants or a Settlement Class Member under this Agreement, the Court may exercise all equitable powers over the IKO Defendants or such Settlement Class Member to enforce this Agreement and the Final Approval Order irrespective of the availability or adequacy of any remedy at law. Such powers include, among others, the power of specific performance, contempt, and injunctive relief.

## 15. OTHER TERMS AND CONDITIONS

15.1. In the event that this Agreement does not become effective for any reason, this Agreement shall become null and void and of no further force and effect. In such instance, this Agreement and any negotiations, statements, communications, or proceedings relating thereto, and the fact that the parties agreed to the Agreement, shall be without prejudice to the rights of the Plaintiffs or the IKO Defendants or any Settlement Class Member, shall not be used for any purpose whatsoever in any subsequent proceeding in this action or in any other action in any court or tribunal, and shall not be construed as an admission or concession by any party of any fact, matter, or allegation. In the event that this Agreement does not become effective, Plaintiffs, the IKO Defendants, and the Settlement Class Members shall be restored without prejudice to their respective positions as if the Agreement and any application for its approval by the Court had not been made or submitted. Notwithstanding the foregoing, in the event that the Court should refuse to approve any material part of this Agreement or the Exhibits thereto or if, on appeal, an appellate court fails to affirm the Final Judgment Order entered pursuant to this Agreement, then the parties may (but are not obligated to) agree in writing to amend this Agreement and proceed with the Settlement as so amended. Neither any award of an incentive payment to a Named Plaintiff in an amount less than that sought, nor an award of attorneys' fees, costs, and disbursements to Class Counsel in an amount less than that requested by Class Counsel, nor a reversal on appeal of any

such award shall be deemed to be a modification of a material part of this Agreement that causes the Agreement to become null and void pursuant to this section.

15.2. The IKO Defendants represent and warrant that: (a) they have all requisite corporate power and authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby; (b) the execution, delivery, and performance of this Agreement have been duly authorized by all necessary corporate action on the part of the IKO Defendants; (c) its signatories to the Agreement have full authority to sign on behalf of and to bind the IKO Defendants to its terms; and (d) this Agreement has been duly and validly executed and delivered by the IKO Defendants and constitutes its legal, valid, and binding obligation.

15.3. Plaintiffs, the IKO Defendants, and their attorneys agree to cooperate fully in seeking Court approval of this Agreement and to use their best efforts to effect its consummation as provided for herein. They further agree to execute all such additional documents as shall be reasonably necessary to carry out the provisions of this Agreement.

15.4. The undersigned counsel represent that they have been fully authorized to execute this Agreement on behalf of their respective clients.

15.5. This Agreement shall be binding upon and inure to the benefit of the Parties to this Agreement and to all Settlement Class Members and their respective agents, heirs, executors, administrators, successors, or assigns.

15.6. This Agreement and its Exhibits constitute the entire agreement of the Parties with respect to the subject matter thereof. The settlement contemplated by this Agreement is not subject to any condition not expressly provided for herein, and there exist no collateral or oral agreements relating to the subject matter of the Agreement. In entering this Agreement, no party is relying on any promise, inducement, or representation other than those set forth herein and in the Exhibits hereto. Any agreement purporting to change or modify the terms of this Agreement or the Exhibits hereto must be in writing, signed by counsel for each of the Parties to this Agreement.

15.7. All of the Exhibits attached hereto or referred to herein are incorporated as if fully set forth in the body of this Agreement.

15.8. The waiver by any party to this Agreement of any breach of its terms shall not be deemed or construed to be a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous.

15.9. This Agreement may be executed in any number of counterparts, including by facsimile or electronic mail, each of which shall be deemed to be an original. All counterparts shall constitute one Agreement, binding on all parties hereto, regardless of whether all parties are signatories to the same counterpart, but the Agreement will be without effect until and unless all parties to this Agreement have executed a counterpart.

15.10. This Agreement shall be governed by the laws of the State of Illinois without regard to its conflict of laws principles whether set forth in rules, precedent, or case law.

Judgment in a Civil Case (02/11)

15.11. Any action or proceeding to construe or enforce this Agreement or to secure damages for its breach shall be brought in the Court.

15.12. Any headings, subheadings, or titles herein are used for purposes of convenience only and have no other legal force, meaning, or effect.

**FINAL JUDGMENT** is hereby **ENTERED** directing IKO Inc., the Class Representatives, and the Members of the Class to comply and perform in accordance with the terms of this Settlement Agreement, and dismissing with prejudice all claims asserted against IKO on behalf of the class members. The Court shall maintain jurisdiction over this matter only for the purpose of enforcing the Settlement Agreement.

**Dated:**  4/11/2019

s/ Shig Yasunaga
Shig Yasunaga
Clerk, U.S. District Court